**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Plaintiff*, | : | Case No. 1:26-cr-25 |
| vs. | : | Judge Jeffery P. Hopkins |
| WALTER EDWARD WADE (1), RICKY SHEPPARD (2), | : | |
| *Defendants.* | : | |

## ORDER DENYING MOTION TO REVOKE BOND

Defendants Walter Edward Wade and Ricky Sheppard are charged in a multi-count Indictment with committing particularly heinous offenses that naturally invoke raw human emotion. That emotion, however, cannot be the guide of how the law must be applied to the decision on whether they should or should not be released on bond pending a trial in this case which will ultimately determine their guilt or innocence of the offenses for which they have been charged. Walter Wade and Ricky Sheppard initially appeared for detention hearings before Chief Magistrate Judge Stephanie K. Bowman in March 2026. Following their respective hearings, the Magistrate Judge ordered that Wade and Sheppard be released on bond with conditions. Docs. 19, 24. The Magistrate Judge stayed their release, however, pending the Government's anticipated appeal of those orders. As expected, the Government filed its subsequent appeal, *see* Doc. 26, and Wade and Sheppard filed respective responses, *see* Docs. 28, 29, prior to hearings on March 23, 2026. Upon request of the parties, the Court permitted supplemental post-hearing briefing. Docs. 32, 33, 35.

1

After careful consideration of the arguments of counsel and all the pleadings, the Court finds that the Government's Motion to Revoke Bond (Doc. 26) for Defendants Wade and Sheppard must be **DENIED**.

## I.     BACKGROUND

Wade and Sheppard have been charged with two counts of conspiracy to alter, mutilate or conceal an object in violation of 18 U.S.C. §§ 1512(c)(1), (k), and one count of accessory after the fact in violation of 18 U.S.C. § 3. Doc. 23. Sheppard and Wade are alleged to have moved and disposed of the deceased body of Victim-1, a pregnant female who died of an alleged overdose roughly ten days prior. Doc. 26, PageID 79–80.

Defendants appeared before the Magistrate Judge for detention hearings pursuant to 18 U.S.C. § 3142(f): Sheppard on March 11, 2026, and Wade on March 12, 2026. Following those hearings, the Magistrate Judge found that both Sheppard and Wade were entitled to pretrial release under 18 U.S.C § 3142(c) and ordered them to be released on conditions. Docs. 19, 24. As for Sheppard, the Magistrate Judge ordered, in relevant part, that Sheppard complete inpatient substance abuse treatment while on an electronic monitoring unit ("EMU"), followed by home incarceration on a restricted 24-hour lock-down at his residence, subject to court-approved exceptions. Doc. 19, PageID 53–54. Similarly, the Magistrate Judge by order imposed the same restrictions for Wade, with the caveat that Wade be required to seek approval of a suitable residence at the conclusion of inpatient treatment. Doc. 24, PageID 70–71. The Government's appeal of the Magistrate Judge's decision for both Defendants seeks revocation of the release orders predicated on the statutory argument that detention is required to protect the community and to assure the appearance of Wade and Sheppard at

2

future court proceedings. Doc. 26, PageID 76–77. Sheppard and Wade have remained in detention pending adjudication of the Government's appeal.

## II. LAW & ANALYSIS

The authority of magistrate judges to decide whether a defendant should be detained or released pending trial is deeply rooted in the law. *See* 18 U.S.C. §§ 3141, 3142. If a magistrate judge orders that a defendant be released, the Government may seek revocation of that order or amendment of the conditions of release. 18 U.S.C. § 3145(a)(1). If the Government seeks revocation, the district court reviews the decision to release the defendant de novo. *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000); *see also United States v. Young*, No. 19-5692, 2019 U.S. App. LEXIS 33453, at *3 (6th Cir. Nov. 7, 2019) (explaining that § 3145(a)(1) "would serve no purpose if the district court was required to defer to the magistrate judge's rulings").

A defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). In some cases, there is a rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e)(3). But here, where no rebuttable presumption of detention applies, release pending trial is the default. *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law . . . is that a defendant should be released pending trial."). In deciding whether a defendant should be released or detained pending trial, the district court must weigh certain factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence of risk of flight or dangerousness; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed

by the defendant's release. 18 U.S.C. § 3142(g). In connection with the decision to order the release or detention of a defendant, the Government has the burden of persuasion and must prove risk of flight by a preponderance of the evidence, and dangerousness by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

### A. Nature and Circumstances of the Offense

Turning first to the nature and circumstances of the offenses charged. As stated above, Sheppard and Wade have been charged in a multi-count Indictment with two counts of conspiracy to alter, mutilate or conceal an object, in this case, the corpse of a pregnant woman (Victim-1) and her stillborn child, in violation of 18 U.S.C. §§ 1512(c)(1), (k). Doc. 23. These counts carry maximum potential penalties of up to 20 years imprisonment, a $250,000 fine, up to 3 years supervised release, and a mandatory special assessment. Sheppard and Wade have also been charged with one count of accessory after the fact in violation of 18 U.S.C. § 3. That count carries maximum potential penalties of up to 15 years imprisonment, a $500,000 fine, up to 3 years supervised release, and a mandatory special assessment.

The Indictment does not, on its face, adequately portray the gruesome nature of the allegations underlying the offenses charged. But the Government has presented evidence relative to the nature and circumstances of the offenses, and because the law permits the Government to proceed by proffer or hearsay at a detention hearing, *see Stone*, 608 F.3d at 948–49, *United States v. Webb*, 238 F.3d 426 (table), 2000 WL 1721060, at *2 (6th Cir. 2000), the Court finds that it is within its discretion to consider the evidence presented by the Government in assessing this first factor.

The Government's allegations are as follows: The body of Victim-1 and her baby, delivered post-mortem, were found inside of a large plastic container in a rural wooded area

4

on August 3, 2025. Doc. 26, PageID 77. Victim-1's body was found ratchet-strapped and tightly bound, wrapped in a blue tarp inside of a plastic bin, and her baby's body, wrapped separately in a towel, was also found inside that bin. Gov. Ex. 1, Doc. 26-1; Gov. Ex. 2, Doc. 26-2. Though the cause of her death was undetermined, Victim-1 is believed to have died from an overdose from drugs provided to her by Individual-1, a person who authorities suspect is a drug dealer. Doc. 26, PageID 78–79. Individual-1 confirmed that Victim-1 overdosed in his bathtub, and thereafter, he and Sheppard tried, unsuccessfully, to revive her. *Id.* at PageID 78. Roughly 10 days after her overdose, Individual-1 had Wade and Sheppard move Victim-1's body for him. *Id.* at PageID 79. After Wade and Sheppard engaged in that conduct, Sheppard disposed of the bin and Victim-1's body. *Id.*

The nature of the offenses charged in the Indictment are unquestionably very serious. Here, the charges arise from Defendants' decision to move and dispose of deceased Victim-1's corpse without informing law enforcement. It is important to note that even though the allegation that Defendants moved and disposed of Victim-1's body at the request of Individual-1, is concerning and in and of itself, constitutes a horrific act, neither Wade nor Sheppard is alleged to have contributed to Victim-1's death. Even so, it appears from the allegations that Wade and Sheppard were more than willing in the commission of the alleged offenses to help Individual-1, who is suspected of having been engaged in drug distribution activity and responsible for Victim-1's death, avoid detection by law enforcement. In addition, Sheppard is alleged to have assisted Individual-1 in his attempts to revive Victim-1, and when unsuccessful, Sheppard and Individual-1 left Victim-1 in the tub until her body was moved more than a week later. Doc. 26, PageID 78–79. Given these circumstances, coupled with the fact that Sheppard and Wade, if convicted, will face lengthy terms of incarceration, the

5

detention of both seems warranted under the first factor which considers the nature and circumstances of the offenses charged. *See United States v. Brooks*, No. 21-1646, 2021 U.S. App. LEXIS 33089, at *4–5 (6th Cir. 2021) (considering the potential penalties the defendant would face if convicted, and finding that a substantial term of imprisonment favors detention).

### B. Weight of Evidence of Dangerousness and Risk of Flight

The second factor relates to the weight of the evidence of dangerousness and risk of flight. As the Sixth Circuit has explained, this "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community." *Stone*, 608 F.3d at 948 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). Importantly, this factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Id*. In making this determination, the Court considers the evidence of dangerousness of each Defendant separately.

### 1. Defendant Wade

In Wade's case, the evidence of dangerousness is arguably the most heavily contested factor. The Government's concern, here, is focused squarely on Wade's risk of non-appearance and the danger that he poses to himself. In its briefing, the Government asserts that Wade is a risk to himself because of his drug addiction and that there exists a risk of suicide, based on comments he made after being arrested. Doc. 26, PageID 81. Wade counters that the record does not support a finding that he is suicidal and that any risk of self-harm is not an appropriate consideration under the Bail Reform Act. Doc. 35, PageID 146–47.

The plain language of the Bail Reform Act refers to the "safety of *any other person* and the community," and does not refer to the defendant personally. *See* 18 U.S.C. § 3142(f)

6

(emphasis added). Nonetheless, the dichotomy set up by the slight ambiguity in the statute presents a fair question the Court is obligated to consider: does the aim of the Bail Reform Act extend to assuring the safety of the accused against suicide? The Sixth Circuit has not squarely addressed this question in the context of the potential for self-harm on the part of the defendant, *i.e.*, suicide risk or overdose, though the Government cites to *United States v. Fox*, No. 17-3673, 2017 WL 11546290, at *3 (6th Cir. Sept. 22, 2017), for the proposition that our Circuit has accounted for suicidal tendencies when assessing the factors under 18 U.S.C. § 3142(g). That, however, is not quite what occurred in *Fox*, nor does it reflect what the Circuit held. In *Fox*, the Circuit acknowledged that defendant's prior suicide attempt but only in the context of discussing the defendant's third-party custodians. There, the Circuit said: "[The co-custodians] failed to consistently and adequately monitor [the defendant] even after learning of the investigation into his present charged conduct, as evidenced by his suicide attempt and being left alone with his developmentally-disabled sister at times. *Given this history, even if credible, [the defendant's] co-custodians' promises to adequately supervise him raise concerns.*" *Fox*, 2017 WL 11546290, at *3 (emphasis added). The mere mention of suicide in *Fox*, arising from the sufficiency of the defendant's third-party custodians, is too attenuated to say that the Sixth Circuit has considered suicidal tendencies to be an appropriate independent consideration under § 3142(g) when assessing dangerousness and risk of flight. Here, there has been no credible attempt at suicide, only a passing comment by Wade made at the time of his arrest.

In the context of weighing evidence of dangerousness as it relates to the potential suicide of a defendant facing pretrial detention, the Court finds more persuasive the Seventh Circuit's decision in *United States v. Storme*, 83 F.4th 1078 (7th Cir. 2023). In that case, the Seventh Circuit considered "whether suicide risk *alone* poses a sufficient danger to justify

detention." *Id.* at 1083 (emphasis added). The court in *Storme* concluded that the Bail Reform Act "requires a finding that the defendant's conduct poses a danger to some person *other* than themselves." *Id.* at 1084. The *Storme* court went on to say that "the mere risk of self-harm is not *itself* enough" to justify detention. *Id.* at 1084 (emphasis added). Though detention was ultimately determined appropriate in *Storme*, the Seventh Circuit made clear that *Storme* was not a "routine case," because the defendant's "suicide threats created more than a mere risk of self-harm." *Id.* at 1084. Instead, the risks presented by the defendant in the case were "[t]ied explicitly to his charges, [and] were essentially threats of unpredictable violence if the district court ruled against him." *Id.* at PageID 1084–85. So, while suicide risk *alone* is not enough to order detention, the Seventh Circuit nonetheless considered suicide risk to be a relevant factor when there was additional evidence that the defendant's conduct posed a danger to a person other than themselves.

When considering *Storme* in the context of this case, the Court finds that Wade's risk of suicide or his potential for overdose—to the extent that such risk exists—is alone insufficient grounds upon which to justify detention based on dangerousness. Unlike *Storme*, where there was evidence of a rapidly worsening condition on the part of the defendant and a significant danger of escalation that would place *others* in danger, here there has been no showing on the part of the Government that Wade's release, under the strict conditions imposed by the Magistrate Judge, would pose a danger to any other person or the community. Thus, the Court, in accordance with *Storme* rejects the Government's efforts to justify

8

detention based exclusively on utterances overheard by authorities made at the time of Wade's arrest that he poses a danger to himself by virtue of his alleged suicidal tendencies.[1]

But what about his prior felony capiases and active traffic warrant, *see* Doc. 16, PageID 46, and his unstable housing and drug addiction? Doc. 26, PageID 85. Sure, these are all relevant considerations, but the Government has not persuaded the Court by a preponderance of the evidence that there are *no* conditions that can assure Wade's appearance, nor that the conditions imposed by the Magistrate Judge are insufficient or lacking. *See Hinton*, 113 F. App'x at 77. To address Wade's drug addiction, the Magistrate Judge ordered that Wade be placed in inpatient treatment. Doc. 24, PageID 71. To mitigate concerns about risk of flight from that facility, the Magistrate Judge ordered that Wade be placed on an EMU, or 24/7 electronic monitoring. *Id*. To address concerns about his unstable housing and prior failures to appear, the Magistrate Judge also ordered that Wade seek approval for a suitable residence at the conclusion of inpatient treatment before then being subject to the strictest form of location monitoring: home incarceration. *Id.* at PageID 70–71. Further, despite his drug addiction, there is no indication that Wade is engaged in drug-related activity, like distribution, such that there is evidence of dangerousness to the community in that regard. We are reminded here that the burden is on the Government to demonstrate by clear and

---

[1] The Government also cites to several other cases in support of its position, but these cases do not move the needle. For example, the Government cites to *United States v. Workman*, 680 F. App'x 699, 702 (10th Cir. 2017), a case contemplating whether the district court properly considered the defendant's past suicide attempts when deciding whether any conditions would reasonably assure the defendant's appearance. For one, this transforms the Government's position from that which suggests Wade's suicide risk poses a risk of danger, to one that says his suicide risk poses a risk of flight. That aside, the Seventh Circuit in *Storme* arrived at a conclusion much different than the Tenth Circuit: "[s]uicide risk is distinct from a risk of flight or nonappearance." *Storme*, 83 F.4th at 1083. "[N]onappearance refers to an attempt to avoid submitting to a court's jurisdiction, not to death. . . Consider the practical implications of a contrary conclusion. If a defendant's death constituted a form of nonappearance, judges could detain upon a showing of a sufficient risk of death, including one created by age, poor health, or inadequate access to medical services. We have a difficult time seeing how Congress intended the Bail Reform Act to operate with such breadth." *Id.*

convincing evidence proof of dangerousness. *See Hinton*, 113 F. App'x at 77. Under these circumstances, the weight of the evidence of dangerousness and risk of flight is not enough to find this consideration favors detention because there exists a combination of conditions that can reasonably assure Wade's appearance and the safety of any other person and the community.

### 2. Defendant Sheppard

Regarding Sheppard, the other person charged in the Indictment with not only helping to move Individual 1's body but also with having assisted Individual-1 in his attempts to revive Victim-1, and when unsuccessful, leaving Victim-1 in the tub until her body was moved more than a week later, *see* Doc. 26, PageID 78–79, the Government argues that the weight of evidence of dangerousness and risk of flight is strong and demands detention. Like Wade, the Government also asserts that Sheppard is dangerous because of his addiction. Doc. 26, PageID 88. There is no dispute that Sheppard has a well-documented history of serious controlled substance abuse. He admitted to Pretrial Services that he used heroin daily until he was arrested. Doc. 17, PageID 45. But the Government has offered no evidence that would permit this Court to find that Sheppard's addiction is alone sufficient evidence of dangerousness. Instead, the Government argues that court-ordered substance abuse treatment provides "no guarantees." Doc. 26, PageID 88. That may be true, but inpatient substance abuse treatment would serve to mitigate the risk that Sheppard poses to himself and the community. Additionally, the Court finds unpersuasive the Government's invocation of the unfortunate circumstances that befell the defendant in *United States v. Fugate*. There, that defendant, after being released on bond and sent to inpatient treatment, regrettably died of an overdose. Contrasted against that misfortune, this Court has observed on several occasions

10

defendants with controlled substance abuse addictions who have been released on bond and ordered to undergo inpatient treatment tell an entirely different story. An isolated incident like the one on display in *United States v. Fugate* is not enough to find that substance abuse treatment would be futile for all similarly-situated defendants, especially those like Sheppard lacking other indices of dangerousness. More to that end, though Sheppard has a history of drug abuse, there is no indication that Sheppard has engaged in any type of drug distribution activity that would render him a danger to the community from that perspective. *Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community.").

The weight of the evidence of risk of flight presents a closer question. The record shows that Sheppard has amassed at least 12 bench warrants, 6 failures to appear, and 2 probation violations. Doc. 17, PageID 47. This history is relevant to assessing risk of flight. *See United States v. Moore*, No. 20-3497, 2020 WL 6580481, at *2 (6th Cir. July 8, 2020) (considering the defendant's history of multiple supervised release violations, propensity to reoffend, and prior failures when assessing evidence of risk of flight and danger to the community). However, from the record presented, it is not clear to the Court when the bench warrants were issued and when the failures to appear occurred. This makes it harder to assess the relevance of this history. Additionally, there are several considerations that weigh in Sheppard's favor to mitigate concerns that his past history of non-appearance will repeat. If released, Sheppard would be able to reside with his parents and he has additional family and community ties, including two local adult children. These facts militate against risk of flight. Though it is a close call, when considering the conditions available to mitigate concerns relative to Sheppard's history, the Court finds the Government has not shown risk of flight by a

preponderance of the evidence and that this factor weighs slightly in Sheppard's favor to the necessary degree.

### C. History and Characteristics of the Defendant

The next factor relates to the defendant's "history and characteristics," meaning that the Court should consider the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

#### 1. Defendant Wade

Wade's history and characteristics favor release. Wade was born and raised in Cincinnati, Ohio and has lived in the Southern District of Ohio his entire life. Doc. 16, PageID 43. Wade has a minimal criminal history, involving prior convictions for assault, operating a vehicle while intoxicated, and drug possession. *Id.* at PageID 44–45. What is most notable here is that all three of Wade's prior convictions occurred nearly, or well beyond, a decade ago. In fact, he was convicted of assault in 2000 and of operating a vehicle while intoxicated in 2008. *Id.* With regard to his most recent conviction in 2017 for drug possession, Wade was released on his own recognizance pending adjudication of the charges. *Id.* at PageID 45. Though several capiases were issued, presumably for non-compliance with the conditions of his bond, it does not appear that his bond was ever revoked and by all accounts, the record shows that he remained on bond until he was sentenced. *Id.* Wade was sentenced to three years community control, however, Wade later failed to report to probation, and a warrant was issued for his arrest. *Id.* His community control was ultimately revoked, and he was sentenced to 30 days confinement. *Id.* Though concerning, there is no evidence that Wade

12

intentionally attempted to flee or evade prosecution at any point—rather, the reality appears to have been that Wade struggled to find adequate transportation to adhere to the state court order based on a lack of financial resources. Relevant, here, too is Wade's history of substance abuse. Wade has a history of using marijuana, heroin, and methamphetamine. Despite his extensive substance abuse history, Wade has never engaged in substance abuse treatment. Based on his reported history, Wade would benefit from substance abuse treatment, so a condition like mandatory inpatient treatment is suitable for him.

All that said, the record does raise concern about Wade's housing stability and his ability to find suitable housing for purposes of home incarceration. However, as discussed above, the Magistrate Judge ordered that Wade be placed in inpatient treatment and seek approval of a suitable residence at the conclusion of inpatient treatment. And to that end, Wade's counsel has requested that the Court place him in a long-term inpatient facility that would provide transitional housing upon completion of the program. Doc. 35, PageID 145. When we consider all of Wade's history and characteristics, and the conditions available to the Court to address any areas of concern, this factor favors Wade's release. To be clear, however, Wade will remain at the inpatient care facility he is assigned until a suitable residence is found and his release to that residence receives this Court's approval, which constitutes a slight amendment to the Magistrate Judge's order.

### 2. Defendant Sheppard

Turning then to Sheppard. Sheppard has a more extensive criminal history, with prior convictions for driving under the influence, disorderly conduct, abusing police, contempt of court, and drug abuse. Doc. 17, PageID 46. Though most of his convictions occurred more than 20 years ago, Sheppard was charged, and later convicted, of drug abuse in 2020 and

13

2021. *Id.* Additionally, Sheppard also has several suspended driver's license convictions and convictions for obstruction, disorderly conduct, public intoxication, misdemeanor drug possession, criminal trespass, and drug paraphernalia abuse instruments. *Id.* at PageID 47. Sheppard has also amassed at least 12 bench warrants, 6 failures to appear, and 2 probation violations. *Id.* As discussed earlier, his history of non-compliance is of great concern.

With that said, Sheppard has substantial familial and community ties. Sheppard was born and raised in Butler County, Ohio, and has lived there all his life. *Id.* at PageID 44. He is close to his parents, who represented that Sheppard would be permitted to live with them if released on bond. *Id.* Beyond his parents, Sheppard has contact with his two adult children and some contact with his siblings, all of whom live in the Southern District of Ohio. *Id.* at PageID 45. As to his employment, Sheppard's father represented that Sheppard has been working for him for the past 4–5 years in the landscaping and construction business. Doc. 28, PageID 93. But not unlike his co-defendant, Sheppard has a history of substance abuse— perhaps a more extensive history. Sheppard admitted to prior use of cocaine, recent use of methamphetamine, and daily use of heroin up until he was arrested. Doc. 17, PageID 45. Sheppard participated in residential treatment for one week at a facility in Dayton, Ohio, but it is unclear when that treatment occurred, and it is apparent that it was unsuccessful.

When balancing all of Sheppard's history and characteristics and considering that information in the context of risk of flight and danger to the community, the Court finds that there are conditions that can reasonably assure his appearance and the safety of other persons and the community such that Sheppard's history and characteristics ultimately weigh in favor of release. To mitigate concerns about Sheppard's substance abuse, the Magistrate Judge ordered, and this Court agrees, that he must complete inpatient treatment on EMU, followed

14

by 24/7 home incarceration. Sheppard has the opportunity to live with his parents while on home incarceration, which further bolsters his request for release. Though it appears that Sheppard desires to continue working while on home incarceration, the Court finds that 24-hour-a-day lock-down at his residence is necessary to ensure his appearance and the safety of the community. In sum, Sheppard may not leave his parents' residence unless approved by this Court.

### D. Nature and Seriousness of Danger Posed to the Community

#### 1. Defendant Wade

As to the final factor in making the determination on detention, the Government asserts that Wade poses a significant danger to the community based on his serious drug addiction. Doc. 26, PageID 86. But a defendant's drug addiction is not sufficient evidence of dangerousness, especially where as here, Wade is not alleged to have distributed drugs, nor contributed to Victim-1's death. If anything, his drug addiction is evidence of dangerousness to himself, not the community. Inpatient treatment would be a more suitable placement for a defendant like Wade, who would benefit from targeted substance abuse treatment. Further, although Wade has a criminal history, his criminal history is minimal, involving only three convictions, and none of those are of recent vintage.

Beyond this, the Government attempts to persuade that Wade is a danger to the community based on the nature and circumstances of the offense. The Court has already acknowledged the seriousness of the offense, as noted, these are crimes of horrific proportion and invoke all manner of human emotion. But that alone does not show that Wade is a serious danger to the community. Here, there has been no showing by clear and convincing evidence under the Bail Reform Act of ongoing or repeated violent conduct, nor any evidence of his

involvement in violence surrounding Victim-1's overdose and resulting death. Additionally, the Government's assertion that Wade was ordered to be released "to eventually live at large in the community" is neither accurate, nor persuasive. Doc. 26, PageID 76. The Magistrate Judge ordered inpatient treatment and intensive home incarceration. On home incarceration, Wade would be restricted to his home on 24-hour-a-day lockdown subject only to court-approved exceptions. Doc. 24, PageID 70. In other words, to the extent that Wade poses a danger to the community, there are conditions that can and have been imposed to mitigate that danger. *See United States v. Taylor*, 165 F.4th 1029, 1033 (6th Cir. 2026) ("[E]ven if a court determines a defendant is dangerous, he still may be released unless the government shows that 'no conditions of release can assure . . . the safety of the community.'" (quoting *Stone*, 608 F.3d at 946)). When considering all these circumstances, the final factor counsels in favor of release.

### 2. Defendant Sheppard

Sheppard is alleged to have had a greater involvement in the events underlying the charged offenses than Wade. But like Wade, there is no offering of clear and convincing proof presented to this Court by the Government that Sheppard has distributed drugs, nor that he contributed to Victim-1's death. When considering the nature and seriousness of the danger posed to the community, courts focus on the danger that would arise from the defendant's release. *United States v. Hoilman*, No. 22-6108, 2023 WL 4074630, at *2 (6th Cir. Apr. 24, 2023) (assessing danger that releasing defendant posed to a particular category of potential victims); *United States v. Smallwood*, No. 09-5566, 2009 WL 9119876, at *2 (6th Cir. Aug. 17, 2009) (identifying a potential victim who might be in danger if defendant were released). And in some cases, the nature of the offense may give rise to the seriousness of the danger posed.

*See, e.g.*, *Stone*, 608 F.3d at 947 n.6 (discussing the danger posed by drug trafficking). But here, Sheppard has not been charged with an offense that poses an inherent danger to the community, nor is there an identifiable category of victims that may be at risk of danger if Sheppard were released. This is especially true when considering the conditions available to the Court—including the conditions that the Magistrate Judge found appropriate: inpatient treatment, EMU (or electronic monitoring), and home incarceration. Thus, the final factor tips the scales in favor of releasing Sheppard pending trial pursuant to the rather high bar imposed by the Bail Reform Act.

### III.    CONCLUSION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). As set forth herein, the Court finds that (1) the Government has failed to demonstrate risk of flight by a preponderance of the evidence and dangerousness by clear and convincing evidence, and (2) there are conditions that could reasonably assure the appearance of Defendants as required and the safety of other persons and the community. Wade and Sheppard must therefore be released. Accordingly, the Government's Motion to Revoke Bond (Doc. 26) is **DENIED**.

Wade and Sheppard shall remain in custody pending proper placement at inpatient treatment facilities. The Pretrial Services Office shall notify the Court once placement has been finalized, and at that time, the Court will order Defendants' release. Wade and Sheppard will be subject to all conditions of release as ordered by Chief Magistrate Judge Bowman in addition to those stated in this Order. Docs. 19, 24.

**IT IS SO ORDERED.**

April 28, 2026 _____

Jeffery P. Hopkins
United States District Judge